# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS A. FIGUEROA GUZMAN, ET AL., <br><br> Plaintiffs, <br><br>    v. <br><br> WHM CARIB, LLC, <br><br> Defendant. | Civil No. 14-1345 (SEC) |

## OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment, Docket # 50, seeking to dismiss Plaintiffs' claims under the American with Disabilities' Act, 42 U.S.C. § 12102, et seq. (ADA), and his claims under Puerto Rico's wrongful dismissal and general torts statutes. Because Plaintiffs failed to establish *prima facie* claims for discrimination and retaliation under the ADA, Defendant's motion is **GRANTED** as to the federal claims. The Court declines to exercise supplemental jurisdiction as to Plaintiffs' Commonwealth law claims.

### I.     Factual and Procedural Background

WHM Carib, LLC (Wyndham or Defendant) owns and operates the Wyndham Grand Resort Rio Mar in Rio Grande, Puerto Rico. Luis Figueroa (Figueroa or Plaintiff) started at Wyndham's Culinary Department on May 2009, as a Second Cook. Working his way up, he got promoted to First Cook, then Lead First Cook, and finally to Sous Chef.

Early in 2013, Figueroa suffered an accident while carrying supplies on a dolly from the storage room to one of the hotel restaurants. Weeks later, he sought medical assistance from the Puerto Rico State Insurance Fund (SIF). He was ordered to rest for ten days and then returned to work with continued treatment. Two days after his return, he received a favorable end-of-the-year job-performance evaluation that

recognized him as a "Key Contributor" to Wyndham's Culinary Department. Docket # 50-15.

Plaintiff's employment relationship took a turn for the worse on April 30, 2013, after another Wyndham employee accused him of leaving the hotel premises through an unauthorized exit with hotel supplies. Figueroa was suspended a few days later pending an internal investigation on the potential theft. He was ultimately terminated for stealing a box of defrosted chicken breasts and for lying during the investigation process.

Between the suspension and termination, Figueroa filed a disability discrimination and retaliation charge before the Equal Employment Opportunity Commission (EEOC). The charge states that after returning to work from the SIF's leave, Luis Acevedo—Plaintiff's immediate supervisor—started discriminating against Figueroa because of his alleged disability. It also charges Acevedo with manufacturing the theft accusation to get Figueroa fired. Docket # 50-17.

Almost three months after the EEOC issued a Notice of Right to Sue, Figueroa and his wife filed this action against Wyndham[1] alleging discrimination and retaliation under the ADA; unjust dismissal under Act No. 80 of May 30, 1976, P.R. Laws Ann. Tit. 29 §185a et seq. (Act 80); and general damages under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Law Ann. Tit. 31 §§ 5141-5142.[2] In due course,

---

[1] Plaintiffs also joined four other Wyndham employees. But because neither the ADA nor Title VII applies to individual defendants, see Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 52 2011 (1st Cir. 2011); Fantini v. Salem State Coll., 557 F.3d 22, 31 (1st Cir. 2009), the Court dismissed with prejudice the federal claims against the individual employees. The Court declined to exercise supplemental jurisdiction over Plaintiff's pendent local-law claims against the individual employees, and therefore dismissed them without prejudice. See Docket ## 17-18.

[2] Plaintiffs—apparently by mistake—also brought an action for hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, which bars only discrimination on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e–2(a). However, Defendants correctly point out that the complaint's allegations are limited to discrimination and retaliation on an alleged disability theory. The Court *sua sponte* dismisses the Title VII claims because "the material facts are crystal clear and no amendment of the complaint could possibly serve to alter the Court's disposition of Plaintiffs' claims." Villegas-Reyes v. Universidad Interamericana de P.R., 476 F. Supp. 2d 84, 92 (D.P.R. 2007) (dismissing *sua sponte* Plaintiff's Title VII claims at the summary judgment stage were the complaint only alleged discrimination on the basis of age and disability).

Defendant filed a well-supported motion for summary judgment. Plaintiff's belated response, on the other hand, devoted less than a page to discussing the merits of his case.

## II.     Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Once the movant properly configures a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). So the nonmovant cannot rest on conclusory allegations and improbable inferences. Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Technologies GmbH, 781 F.3d 510, 516 (1st Cir. 2015). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. Failure to shoulder this

burden "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

### III. Applicable Law and Analysis

Wyndham moves for summary judgment arguing that the evidence on record reveals that Plaintiff: 1) was not disabled within the meaning of the ADA; 2) did not request a reasonable accommodation; 3) did not engage in protective conduct under the ADA that could lead to a retaliation claim; and, in any event, 4) Wyndham offered a non-discriminatory reason for Plaintiff's termination. The Court agrees with Defendant on its first and third arguments. Because these are case-dispositive, the Court need not reach the merits of the second and fourth arguments. Further, as the federal claims falter before trial, the Court declines to exercise supplemental jurisdiction over Plaintiff's Commonwealth law claims. See Gonzalez-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit...will trigger the dismissal without prejudice of any supplemental state-law claims." (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995))

The ADA forbids employers from discriminating against qualified persons in "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment" because of a person's actual or perceived disability. 42 U.S.C. § 12112(a). Where, as here, direct evidence of discrimination is absent, a plaintiff must rely on circumstantial evidence to establish a *prima facie* case under the ADA through the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973). Under this analysis, a plaintiff must offer evidence sufficient to establish that he "(i) has a disability within the meaning of the [ADA]; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company

subject to the [ADA]; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result." Id.

If the plaintiff succeeds in establishing a *prima facie* claim, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action." Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 186-87 (1st Cir. 2011). "If the employer offers a non-discriminatory reason, the burden then shifts back to the plaintiff to show that the employer's justification is mere pretext cloaking discriminatory animus." Id.

Wyndham further argues that unlike Title VII claims, where plaintiffs have to prove only that discrimination was a "motivating factor" behind the employer's adverse action, see Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989), the ADA requires proof that discrimination was the "but-for" cause of the adverse employment action. It is true that in Serwatka v. Rockwell Automation, Inc., the Seventh Circuit held that under the 2008 version of the ADA—which provided that "[n]o covered entity shall discriminate against a qualified individual with a disability *because of* the disability of such individual," 591 F.3d 957, 962 (7th Cir. 2010) (quoting 42 U.S.C. § 12112(a) (2008))—a plaintiff had to prove that his disability was the *sine qua non* cause of his termination. That case relied on Gross v. FBL Fin. Servs., Inc., where the Supreme Court observed that the ADEA's language prohibiting an employer to take an adverse action "*because of* such individual's age," 557 U.S. 167, 176 (2009) means that a plaintiff bringing a disparate treatment claim under that statute must prove that age was the "but-for" cause of the adverse action. Id. at 180. The Sixth Circuit reached the same conclusion in Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 318 (6th Cir. 2012) (ADA), and the First Circuit cited these cases with approval in Palmquist v. Shinseki, 689 F.3d 66, 74 (1st Cir. 2012) (holding that a "but-for" standard applies to discrimination claims under the Rehabilitation Act).

But Serwatka and Lewis, were decided under the previous version of the ADA. In 2008, Congress enacted significant amendments to the ADA. In Silk v. Bd. of

Trustees, Moraine Valley Cmty. Coll., the Seventh Circuit noted that "the language prohibiting discrimination '*because of*' a disability was amended to prohibit discrimination '*on the basis of a disability*.'" 795 F.3d 698, 705 (7th Cir. 2015). Because the issue was not adequately before it nor adequately briefed, the Seventh Circuit refused to address "whether the but-for standard [it] announced in Serwatka survived the amendment to the ADA" Id. at 706. Likewise, this Court need not address this question now because, regardless of the standard applied, Plaintiff's ADA claims are doomed from the very start. Figueroa's admissions trump the first prong of a *prima facie* case—establishing disability within the meaning of the ADA.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102. To prove a substantial limit to a major life activity, "[e]vidence of a medical diagnosis of impairment, standing alone, is insufficient." Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011); see also Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002) ("It is insufficient...to merely submit evidence of a medical diagnosis of an impairment."). At the summary judgment stage, Figueroa "must produce sufficient evidence that his impairment was 'profound enough and of sufficient duration, given the nature of [his] impairment,' to significantly restrict him in working." Id. at 241 (citing Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 33 (1st Cir. 2001).

Other than conclusory statements indicating that the accident rendered him unable to lift heavy loads, prepare food, or chop vegetables, Docket # 68-4, ¶ 19, the record is bereft of evidence that Figueroa was disabled within the meaning of the ADA. Plaintiff does not proffer a medical diagnosis or a medical certification evincing that he was disabled in any way. The only medical evidence on record is a report from the SIF ordering Figueroa a ten-day rest and an unspecified continued treatment. Docket # 50-14. More importantly, the report does not indicate whether Plaintiff was

**Civil No. 14-1345 (SEC)**                                                                 Page 7

diagnosed with any disability or impairment. Figueroa even admits that he has "no clue or…idea as to whether the SIF gave [him] some specific limitation." Docket # 50-4 at 43. This is simply insufficient to establish liability under the statute. See Xerox Corp., 294 F.3d at 240 (affirming the district court's dismissal of an ADA claim stating that a "conclusory allegation without evidentiary support; it is…insufficient to carry [the plaintiff's] burden").

Furthermore, Figueroa does not raise a record of impairment nor offers any evidence that he was regarded as disabled by Wyndham. See id. at 238, n. 4. Having failed to offer evidence that he was disabled, had a record of disability, or was regarded as disabled within the meaning of the ADA, Plaintiff failed to establish a *prima facie* claim for disability discrimination. The Court thus moves on to Plaintiff's retaliation claim.

The ADA forbids retaliation "against any individual because such individual has opposed any act or practice made unlawful…or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA." 42 U.S.C. § 12203. This action is independent from, and "may succeed[,] even where [a] disability claim fails." Valle-Arce v. Puerto Rico Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011) (citing Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007)).

To establish a *prima facie* retaliation claim under the ADA, Figueroa "must show that 1) [he] engaged in protected conduct, 2) [he] suffered an adverse employment action, and 3) there was a causal connection between the protected conduct and the adverse employment action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012).

Like his disability claim, Figueroa's retaliation claim also fails at the outset. The only protected conduct asserted in the complaint concerns his claim before the SIF for the work-related accident. Docket # 1, ¶ 54. Wyndham submits four cases supporting the proposition that this is not protected conduct under the ADA. See

Reynolds v. American National Red Cross, 701 F.3d 143, 154 (4th Cir. 2012) ("Filing a workers' compensation claim is not something that is covered by the ADA, but rather by retaliation provisions under state law"); Kendall v. Donahoe, 913 F. Supp. 2d 186, 193 (W.D. Pa. 2012) aff'd sub nom. Kendall v. Postmaster Gen. of U.S., 543 F. App'x 141 (3d Cir. 2013) ("there is no statutory basis to find that filing for workers' compensation benefits is a 'protected activity' under the ADA"); Fieni v. Franciscan Care Ctr., 2011 WL 4543996 at *7 (E.D. Pa. Sept. 30, 2011) ("a plain reading of the statute suggests that [the application for or receipt of workers' compensation benefits] it is not protected activity [under the ADA]"); Leavitt v. SW & B Construction Co., 766 F.Supp.2d 263, 286 (D. Me. 2011) (filing a workers' compensation claim does not constitute protected activity under the ADA). Plaintiff failed to distinguish any of these cases.[3]

Although requesting compensation benefits is not the same as seeking medical assistance, the same principle applies. When Figueroa sought medical attention at the SIF, he was not opposing any unlawful employment practice by Wyndham. Neither was he making a charge, testifying, assisting nor otherwise participating in an investigation, proceeding, or hearing related to the ADA. See 42 U.S.C. § 12203. Hence, Plaintiff's request for medical assistance from the SIF does not constitute protected conduct pursuant to the ADA's retaliation provision. The Court need not go further to dismiss this claim.[4]

---

[3] As result, Plaintiffs waived any argument in this regard. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[4] Defendants candidly concede that "requesting an accommodation and complaining of discrimination on the basis of disability are protected conduct for purposes of the ADA's retaliation provision." Docket # 51, n. 2 (citing Valle-Arce, 651 F.3d at 198). However, they also correctly point out that the complaint does not assert that Figueroa's retaliation claim was based on his request for accommodations. While Figueroa did allege that he requested two additional cooks after returning from the SIF, Docket # 1, ¶ 24, the record reveals that this request was made by all Sous Chefs on December 2012, months before the alleged accident. Moreover, even if Plaintiff's request had come after his accident, Plaintiff does not explain why his request was "reasonable" within the meaning of the statute. After all, he was asking his employer to triple the available workforce due to his injury, with all the concomitant expenses that implies. Finally, the EEOC complaint cannot serve as the basis for retaliation as it was filed after Figueroa's termination. Plaintiffs failed to address these issues in their response and thus, waived any arguments against them. See Zannino, 895 F.2d at 17.

Case 3:14-cv-01345-SEC   Document 72   Filed 03/14/16   Page 9 of 9

**Civil No. 14-1345 (SEC)**                                                                 **Page 9**

**IV.     Conclusion**

Because Plaintiffs failed to establish a *prima facie* case for ADA discrimination and retaliation, all the federal claims are **dismissed with prejudice.** The Court declines to exercise supplemental jurisdiction over the Commonwealth law claims, and therefore, Plaintiffs' claim under Puerto Rico's wrongful termination and general tort statutes are **dismissed without prejudice.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of March, 2016.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge